# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

The City of Farmington Hills                    Civil No. 10-4372 (DWF/JJG)
Employees Retirement System,
individually and on behalf of
all others similarly situated,

        Plaintiff,

v.                                              **MEMORANDUM**
                                                **OPINION AND ORDER**
Wells Fargo Bank, N.A.,

        Defendant.

---

David M. Cialkowski, Esq., Carolyn G. Anderson, Esq., Brian C. Gundmundson, Esq., and June Pineda Hoidal, Esq., Zimmerman Reed, P.L.L.P.; and Peter A. Binkow, Esq., Andy Sohrn, Esq., Casey E. Sadler, Esq., Elizabeth M. Gonsiorowski, Esq., Robin Bronzaft Howald, Esq., and Jill Duerler, Esq., Glancy Binkow & Goldberg LLP; and Thomas C. Michaud, Esq., VanOverbeke, Michaud & Timmony PC; Christopher D. Kaye, Esq. and E. Powell Miller, Esq., The Miller Law Firm, P.C.; and Avraham Noam Wagner, Esq., The Wagner Firm, counsel for Plaintiffs.

Lawrence T. Hoffman, Esq., Richard M. Hagstrom, Esq., James S. Reece, Esq., Rory D. Zamansky, Esq., Daniel J. Millea, Esq., and Michael R. Cashman, Esq., Zelle Hofmann Voelbel & Mason LLP; and Brooks F. Poley, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Class Certification (Doc. No. 61). For the reasons set forth below, the Court grants Plaintiff's motion.

# BACKGROUND

The City of Farmington Hills Employees Retirement System ("Plaintiff") is a single-employer defined pension plan. (Doc. No. 63, at 6.) According to the Complaint, Plaintiff and other similarly situated institutional investors participated in a securities lending program offered through Wells Fargo Bank, N.A. ("Wells Fargo"). (Doc. No. 1, Ex. 1, Compl. ¶ 1.) Plaintiff alleges that all members of the putative class (including itself) entered into securities lending agreements ("SLAs") with Wells Fargo. (*See id.* ¶ 5.) As part of Wells Fargo's Securities Lending Program ("SLP"), the investors would allow Wells Fargo to loan their securities to third-party borrowers in return for cash collateral. (*Id.*) Upon receiving this cash collateral, Wells Fargo would invest the collateral and share a percentage of the revenues with the original investors. (*Id.*)

The putative class includes in excess of one hundred institutional investors who participated in the SLP during the Class Period: January 1, 2006 to the present. (Doc. No. 63, at 1.) Plaintiff asserts that it signed an SLA with Wells Fargo that is virtually identical to the SLAs signed by the other investors. (*Id.* at 7.) Further, Plaintiff asserts that every single SLA contains the phrase, "[t]he prime considerations for the investment portfolio shall be safety of principal and liquidity requirements."[1] (*Id.*) Plaintiff also

---

[1]     Plaintiff submitted three SLAs that do not appear to contain the language concerning safety of principal and liquidity requirements. (Doc. No. 63, at 7, n.3; Doc. No. 65, Sohrn Decl. ¶ 2, Exs. 9-11.) One of these SLAs is from 1994 and outside the class period, so the Court need not consider it. (*See* Sohrn Decl. ¶ 2, Ex. 9, at 7.) One of the SLAs contains substantially similar language concerning liquidity and safety of principal. (*See id.*, Ex. 10, at 23) ("The key objective of the management of cash collateral supporting securities loans are to: safeguard principal [and] . . . maintain

(Footnote Continued on Next Page)

asserts that the investment guidelines for the Collateral Investment Trust ("CIT"), the

Collateral Investment for Term Loans Trust ("CITT"), and the Enhanced Yield Fund

("EYF"), and other accounts within the SLP contained language similar to the language

contained in the SLAs.  (*Id.*)  Specifically, the investment guidelines for the CIT, CITT,

and EYF all contain the statement, "the prime considerations for the [CIT, CITT, EYF]

shall be safety of principal and daily liquidity requirements."  (Sohrn Decl. ¶ 2, Exs.

12-14.)  The same language is also present in the investment guidelines received by the

Court for the non-trust pools.[2]  (*Id.*, Ex. 15; Doc. No. 72, Zamansky Aff. ¶ 4, Exs. 3, 5.)

---

(Footnote Continued From Previous Page)

adequate liquidity . . . .").  The final agreement does not appear to be an SLA, but rather
an agreement for the services of an independent contractor.  (*See id.*, Ex. 11.)  Plaintiff,
however, provides only a single SLA containing the sentence "[t]he prime considerations
for the investment portfolio shall be safety of principal and liquidity requirements."  (*Id.*,
Ex. 8, at 2.)  While the Court questions Plaintiff's decision to provide only a single SLA
to support its claim that the SLAs entered into between Wells Fargo and more than one
hundred other class members contain exactly the same language, Wells Fargo does not
appear to dispute Plaintiff's assertion that all the SLAs contained this language.

[2]      Plaintiff submitted investment guidelines for the three trust pools—CIT, CITT,
and EYF—in addition to one other pool, the name of which has been redacted.  (Sohrn
Decl. ¶ 2, Exs. 12-15.)  Because the parties agree there were only three trust pools—CIT,
CITT, and EYF—the Court concludes that the investment guidelines contained in Exhibit
15 must be from a non-trust pool.  Further, Wells Fargo has provided six sets of
investment guidelines with its submissions.  (Zamansky Aff. ¶ 4, Exs. 3-5, Exs. 71-73.)
Exhibits 71, 72, 73, and 5 to the Zamansky affidavit in opposition to the motion for class
certification are the same as Exhibits 12, 13, 14, and 15 to the Sohrn declaration in
support of the motion for class certification.  (*Compare* Zamansky Aff. ¶ 4, Ex. 5, Exs.
71-73, *with* Sohrn Decl. ¶ 2, Exs. 12-15.)  Exhibit 3 to the Zamansky affidavit appears to
be another set of investment guidelines from what must be a non-trust pool as it does not
match the three sets of investment guidelines from the three trust pools.  (Zamansky Aff.
¶ 4, Ex. 3.)  Significantly, at least five sets of investment guidelines that have been
submitted by the parties contain the exact same language concerning safety of principal
(Footnote Continued on Next Page)

Plaintiff and putative class members suffered losses as a result of their participation in the SLP.  (Compl. ¶ 1.)  The gravamen of Plaintiff's argument is that Wells Fargo failed to ensure that the collateral funds were invested in safe, liquid, short-term investments, and instead improperly invested proceeds in high risk, long-term securities.  (*See* Compl. ¶¶ 9, 12, 13.)  Further, Plaintiff argues that Wells Fargo systematically obscured the effects of its mismanagement by concealing investment performance information from the class members in order to prevent them from exiting the SLP.  (*Id.*)  Plaintiff asserts the following six counts against Wells Fargo:  (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Violation of Minnesota Prevention of Consumer Fraud Act – Minn. Stat. § 325F.69; (4) Unlawful Trade Practices – Minn. Stat. § 325D.13; (5) Deceptive Trade Practices – Minn. Stat. § 325D.44; and (6) Civil Theft – Minn. Stat. § 604.14.  (Compl. ¶¶ 50-88.)

## DISCUSSION

### I.    Plaintiff's Claims

Plaintiff has moved for class certification on its claims for breach of fiduciary duty, breach of contract, and consumer fraud.  (*See generally* Doc. No. 63; Doc. No. 97, ("Tr."), at 17.)

To prove a claim for breach of fiduciary duty under Minnesota law, a party must show:  (1) the existence of a fiduciary duty; (2) a breach of that duty;

---

(Footnote Continued From Previous Page)
and liquidity requirements as that found in all of the SLAs signed by the participants in the SLP.  (Zamansky Aff. ¶ 4, Exs. 3, 5; Sohrn Decl. ¶ 2, Exs. 12-15.)

(3) causation; and (4) damages.  *Hot Stuff Foods, LLC v. Dornback*, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010) (citing *Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989)).  Plaintiff claims that Wells Fargo breached its fiduciary duties on a class-wide basis by failing to competently manage the SLP's investments, failing to conform the investments with the investment guidelines, and by concealing the effects of mismanagement of the SLP from the class members.  (Doc. No. 63, at 14, 26.)

Under Minnesota law, proof of a breach of contract claim requires four elements: (1) the existence of a contract; (2) breach of the terms of the contract; (3) causation; and (4) damages.  *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000).  Plaintiff argues that Wells Fargo breached its contractual obligations to members of the class by investing in high-risk, long-term securities in violation of the terms of the SLAs and investment guidelines.  (Doc. No. 63, at 30.)

Finally, the Minnesota Prevention of Consumer Fraud Act ("MCFA") prohibits:

> [t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . . .

Minn. Stat. § 325F.69, subd. 1 (2010).  Merchandise is defined by the statute as "any objects, wares, goods, commodities, intangibles, real estate, loans, or services."  Minn. Stat. § 325F.68, subd. 2 (2010).  Plaintiff alleges that Wells Fargo committed consumer fraud when it misrepresented to investors that it would invest the collateral conservatively to safeguard principal and preserve liquidity.  (Doc. No. 63, at 32.)

## II.     Standard for Class Certification Under Rule 23

A class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Plaintiffs requesting class certification must satisfy both "implicit" and "explicit" legal requirements. Plaintiffs must first establish that a defined class exists and that the class representatives fall within that class. *See Johnson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659-60 (D. Minn. 1991) (citing *East Texas Motor Freight System v. Rodriguez*, 431 U.S. 395, 403 (1977)). Rule 23 of the Federal Rules of Civil Procedure governs class certification.

> To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of three subsections of Rule 23(b). The Rule 23(a) requirements for class certification are: (1) the putative class is so numerous that it makes joinder of all members impracticable; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Fed. R. Civ. P. 23(a)) (citations omitted).

District courts retain broad discretion in determining whether to certify a class. *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir. 1983). When considering a motion for class certification, a court need not ask "whether the plaintiff or plaintiffs have stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met." *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000) (citing *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 178 (1974)). The party

seeking class certification "carr[ies] the burden of proof regarding Rule 23's requirements." *In re Worker's Comp.*, 130 F.R.D. 99, 103 (D. Minn. 1990) (citation omitted).  A court may only certify a class if it is "satisfied after a rigorous analysis that all of the prerequisites are met." *Bishop v. Comm. on Prof'l Ethics*, 686 F.2d 1278, 1287 (8th Cir. 1982) (citing *Gen. Tel. Co.*, 457 U.S. at 161).  When a question arises as to whether certification is appropriate, the court should give the benefit of the doubt to approving the class.  *In re Worker's Comp.*, 130 F.R.D. at 103 (citation omitted).

Wells Fargo does not dispute that the proposed class satisfies the numerosity and commonality requirements of Rule 23(a).  Thus, the Court considers whether Plaintiff meets the typicality and adequacy of representation requirements of Rule 23(a) as well as one of the three subsections of Rule 23(b).

## A.     Typicality

In order for a class to be certified, Rule 23(a) requires that the claims or defenses of the class representative be typical of the other members of the class.  Fed. R. Civ. P. 23(a)(3).  "This requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982) (citation omitted).  Factual variations will not necessarily preclude certification if "the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

In this case, Plaintiff claims, on behalf of itself and the proposed class members, that Wells Fargo breached the fiduciary duty it owed to the proposed class members, breached the terms of the contracts it entered into with the proposed class members, and violated provisions of the MCFA in its dealings with the proposed class members.  The Court finds the typicality requirement satisfied because the claims of both Plaintiff and the class are based on the same legal theories and course of conduct.

Plaintiff claims typicality is met in this case because Wells Fargo entered into SLAs with each of the investors, all of which state that "the prime considerations for the investment portfolio shall be safety of principal and liquidity requirements."  (Doc. No. 63, at 20.)  Further, Plaintiff asserts that similarly stringent investment criteria were applicable across all of the funds managed by Wells Fargo in the SLP.  (*Id.* at 21.)  Plaintiff's claims arise from the purported, "grossly incompetent management of the Program's investment risk, term, and liquidity," and from Wells Fargo's failure to conform the funds to the stated mandates.  (*Id.*; Doc. No. 80, at 9, n.6.)  The class members will likely rely on the same evidence regarding mismanagement of the funds and failure to follow investment mandates concerning risk, term, and liquidity to prove their claims.

Wells Fargo first argues that, because the proposed class members entered into different agreements and participated in different pools (trust vs. non-trust), the fiduciary duties and the contractual obligations owed to the investors are distinct from one another, and Plaintiff's claims are thus atypical.  (Doc. No. 71, at 27.)  The Court notes, however, that a common mandate to ensure liquidity and safety of principal existed across all of the

funds.  Wells Fargo's bald assertion that membership in a trust versus a non-trust pool would alter the contract and fiduciary duty claims is not enough to overcome the fact that all of the SLAs contained the same "prime considerations," and Wells Fargo has failed to substantiate its claim.[3]

Wells Fargo also argues that the fact that class members withdrew from the program at varying times throughout the class period defeats typicality.  (Doc. No. 71, at 27.)  Wells Fargo contends that certain entities will need to rely upon individualized proof to show they reasonably mitigated their damages when they chose not to exit the SLP.  However, individual questions with respect to damages do not defeat class certification.  *See In re AM Int'l, Inc. Sec. Litig.,* 108 F.R.D. 190, 196 (S.D.N.Y.1985); *In re Coll. Bound Consol. Litig.*, No. 93 CIV. 2348, 1994 WL 236163, at *3 (S.D.N.Y. May 31, 1994) (certifying a class in a securities action when faced with mitigation of damages issues).  The time frame in which individuals class members sold their securities may be an issue when determining damages, but the class members are pursuing the same legal theories and will likely utilize the same evidence regarding Wells Fargo's monitoring of the investments and alleged failure to invest the collateral in accordance with the investment guidelines to prove those legal theories.  There are no defenses that

---

[3]     Nothing on the face of the Declaration of Trust (Zamansky Aff. ¶ 4, Ex. 80) appears to alter the fiduciary duties or contractual obligations owed by Wells Fargo to the investors as those duties are articulated in the SLAs and investment guidelines.  Notably, all of the SLAs signed by the participants, including participants in the non-trust pools, represent that the prime considerations of the funds are safety of principal and liquidity requirements.  Further, the investment guidelines for all three trust pools contained this same language.

are truly unique to any of the proposed class members in this case, especially since more than one hundred of them did not sell immediately after losses began to be incurred.[4] Therefore, the Court concludes the claims of the class representative are typical of the claims of the class as a whole.

### B.     Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to establish that the "representative parties will fully and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In order to satisfy the adequacy requirement, Plaintiff must show that:  (1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.  *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995).

---

[4]       Here, there are no fewer than 132 potential class members and Wells Fargo concedes that only approximately twenty sought to exit the program immediately after they began to incur losses.  (Doc. No. 80, at 16, n.10.)  There is no evidence that Plaintiff was made aware of Wells Fargo's alleged fraudulent activity but opted to continue investing in the program, despite having knowledge of the purported fraud.  *Contra Gary Plastic Packaging v. Merrill Lynch*, 903 F.2d 176, 179-80 (2d Cir. 1990) (finding that continued investment after having notice of and investigating alleged fraud created defenses unique to the proposed representative).  Furthermore, there does not appear to be an issue arising from the comparative sophistication of the investors here; rather, Wells Fargo claims that the members of the putative class were all sophisticated investors who knew and understood the risks involved in participating in the SLP.  *Contra Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (concluding that the claims of the proposed class representative were atypical because she "was a sophisticated broker who had access to more information than other investors in the putative class").

Wells Fargo does not appear to contest the first prong. The Court thus finds that Plaintiff and its attorneys are able and willing to prosecute the action competently and vigorously.

With respect to the second prong, the Court finds Plaintiff's interests to be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. Wells Fargo argues that Plaintiff will not adequately represent the class, citing an unavoidable tension between those investors that withdrew early and those that remained in the fund and experienced greater losses. (Doc. No. 71, at 30.) That some of the institutional investors such as Plaintiff may have suffered more substantial losses than others does not render Plaintiff's interests adverse to those of any other proposed class member. Rather, the interests of Plaintiff and the proposed class members are certainly aligned in this case: they share the common goal of recovering damages from Wells Fargo as a result of the SLP's losses. Notwithstanding that the amount of damages may vary from investor to investor, Plaintiff's goals and viewpoints are unlikely to diverge from those of the remainder of the class. Because the proposed class representative's interests are sufficiently similar to those of the class, and because Plaintiff and its counsel are able and willing to competently and vigorously prosecute this action, the Court concludes that Plaintiff has satisfied Rule 23(a)(4).

## C. Rule 23(b)

### 1. Predominance

Under Rule 23(b)(3), a court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual

members" in order to certify a class.  Fed. R. Civ. P. 23(b)(3).  When considering the

facts of a given case, "a claim will meet the predominance requirement when generalized

evidence proves or disproves the elements of the claim on a class-wide basis, because

such proof obviates the need to examine each class member's individual position."

*Buetow v. A.L.S. Enters., Inc.*, 259 F.R.D. 187, 190 (D. Minn. 2009) (citation omitted).

The purpose of the predominance requirement is to "achieve economy and efficiency in

the settlement of disputes."  *Vernon J. Rockler & Co. v. Graphic Enters., Inc.*, 52 F.R.D.

335, 344 (D. Minn. 1971) (citing Fed. R. Civ. P. 23 advisory committee's note).  As

discussed below, the Court concludes that common questions of law and fact

predominate on all three claims for which Plaintiff seeks class certification.

### a.        Breach of Fiduciary Duty Claim

Plaintiff asserts that its breach of fiduciary duty claim satisfies the predominance

requirement because Wells Fargo entered into SLAs with each of the proposed class

members, all of which state that Wells Fargo would serve as a fiduciary for the purpose

of lending securities under the SLP, and Wells Fargo's alleged failure to monitor the

funds to ensure the funds conformed to the investment guidelines is subject to class-wide

proof.  (Doc. No. 63, at 25.)  Wells Fargo maintains, however, that questions regarding

the individualized experience and intelligence of the investors govern the scope and

extent of any fiduciary duties owed in this case.  (Doc. No. 71, at 33.)

The Court concludes that the elements of the fiduciary duty claim are subject to

proof by generalized evidence on a class-wide basis.  *See Buetow*¸ 259 F.R.D. at 190.

There appears to be no dispute that Wells Fargo entered into SLAs with each participant

in the SLP, all of which required Wells Fargo to serve as a fiduciary for the purposes of securities lending; and Wells Fargo acted in a fiduciary capacity as the administrator of the program.  Plaintiff alleges that Wells Fargo owed a fiduciary duty to all class members to follow the investment mandates contained within the SLAs and to monitor the SLP's assets to ensure that the investment selections continued to reflect those mandates.  Notably, Wells Fargo's actions and conduct, not the conduct of any individual class member, is the focal point of the fiduciary duty claim.  Common issues such as whether Wells Fargo knew or should have known that the investments it selected did not comport with investment mandates, whether Wells Fargo failed to monitor the investments to ensure they were not overly risky or illiquid, and whether the class members sustained losses as a result of the alleged breach of Wells Fargo's fiduciary duty to select proper investments and monitor the funds for undue risk, will likely turn on substantially the same evidence for the class as a whole.  *See AFTRA Ret. Fund v. J.P. Morgan Chase Bank, N.A.,* 269 F.R.D. 340, 349 (S.D.N.Y. 2010) (granting class certification on fiduciary duty claim by seventy-six investors in a securities lending program).  Claims concerning Wells Fargo's purported failure to perform any monitoring, failure to maintain a list of its approved investments, and failure to apprehend or respond to information about high-risk, long-term securities, are all subject to proof through generalized evidence in light of Wells Fargo's standardized investment guidelines.  *See id.*  Thus, the Court concludes that class members can rely on generalized evidence to prove that Wells Fargo breached its fiduciary duty to the class as a whole.

**b.      Breach of Contract Claim**

Plaintiff argues that its breach of contract claim also satisfies the predominance requirement because all of the SLAs required Wells Fargo to "abide by the mandate that 'the prime considerations for the investment portfolio shall be safety of principal and liquidity requirements,'" a contractual obligation that Wells Fargo failed to follow with respect to all class members.  (Doc. No. 63, at 26.)  Wells Fargo claims, again without explaining how, that the subscription agreements and the Declaration of Trust signed by some investors and not others, necessarily requires individualized determinations concerning the contractual duties owed by Wells Fargo.[5]  (Doc. No. 71, at 41, n.18.)

The Court concludes that generalized evidence can be used to prove Plaintiff's breach of contract claim on a class-wide basis.  Here, the entire class participated in the SLP, and each class member entered into an SLA with Wells Fargo that contained the following statement:  "The prime considerations for the investment portfolio shall be safety of principal and liquidity requirements."  (Sohrn Decl. ¶ 2, Ex. 8, at 2.)  The class members will likely all rely on that statement to prove that Wells Fargo breached their respective contracts.

---

[5]      Further, Wells Fargo voices its concern about the need for each class member to separately and independently prove its individualized damages.  (*See* Doc. No. 71, at 42.)  Nevertheless, "the mere existence of individual questions such as damages does not automatically preclude satisfaction of the predominance requirement . . . so long as there is some common proof to adequately demonstrate some damage to each plaintiff."  *Bokusky v. Edina Realty, Inc.*, No. 3:92-cv-00223, 1993 WL 515827, at *8 (D. Minn. 1993) (citing *In re Worker's Comp.*, 130 F.R.D. 99, 108 (D. Minn. 1990)).

Plaintiff has alleged that Wells Fargo violated an express mandate contained

within the SLAs when it invested collateral in illiquid and risky assets.  (Doc. No. 63, at

29.)  Whether Wells Fargo breached the terms of each of the SLAs by selecting the

investments it did will be subject to common proof through generalized evidence.  Thus,

the class members need not rely upon individualized evidence to prove their breach of

contract claims.  Moreover, whether Wells Fargo did in fact select investments that did

not conform to the investment mandates in the SLAs will not require a foray into any

individualized understanding of the agreements by the plan participants.  *Contra Avritt v.*

*Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029-30 (8th Cir. 2010) (determining that each

proposed class member's individualized understanding of a contractual provision stating

that non-guaranteed interest would be credited "in a way set by our Board of Directors"

was central to the dispute).  The Court concludes that the breach of contract claim is

subject to proof by generalized evidence on a class-wide basis.

### c.    MCFA Claim

Finally, Plaintiff claims that common questions predominate on its MCFA claim

because Wells Fargo intended for the class members to rely on the statement in the SLA

concerning safety of principal and liquidity requirements, a statement Plaintiff alleges

was fraudulent.  (Doc. No. 63, at 32.)  Wells Fargo asserts that common issues of law and

fact do not predominate on the MCFA claim because the claim requires proof of

individual reliance.  (Doc. No. 71, at 39-40.)  While the Court acknowledges that some

claims under the MCFA are not subject to class certification, the Court concludes that

Plaintiff's MCFA claim in this case can be proven on a class-wide basis through the use of generalized evidence.

The Minnesota Legislature has eliminated the requirement of pleading and proving traditional common law reliance as an element of a statutory misrepresentation in a sales action; however, causation remains an element of such a claim. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001). It is still necessary to prove reliance on the alleged misrepresentations or conduct in order to satisfy the causation requirement. *Id.* What is required to prove this reliance is a causal nexus between the plaintiff's damages and the defendant's wrongful conduct. *Id.* at 14. This causal nexus, however, "need not include direct evidence of reliance by individual consumers." *Id.* Plaintiffs may utilize circumstantial evidence of reliance to prove the causation element of their consumer fraud claims. *Id.*; *Curtis v. Altria Grp., Inc.*, 792 N.W.2d 836, 858 (Minn. Ct. App. 2011), *rev. granted* March 15, 2011 (noting "that the required causal nexus may be established when there is something to connect the claimed damages and the alleged prohibited conduct") (internal quotations omitted).

Here, the parties acknowledge that the SLA for each participant in the SLP contained the statement: "The prime considerations for the investment portfolio shall be safety of principal and liquidity requirements." There is no dispute that each member of the class signed a document containing the alleged misrepresentation. *See Mooney v. Allianz Life Ins. Co.*, Civ. No. 06-545, 2008 WL 2952055, at *2-3 (D. Minn. Jul. 28, 2008) (upholding class certification where there was no question that each member of the putative class had received the alleged misrepresentation and determining

that the plaintiffs could "prove a causal nexus on a class-wide basis through direct and circumstantial evidence that policyholders were misled to their detriment by the references to an 'up-front' and 'immediate' bonus"). *Contra In re St. Jude Medical, Inc.*, 522 F.3d 836, 838-40 (8th Cir. 2008) ("*St. Jude II*") (acknowledging questions over whether patients and doctors had received the alleged misrepresentations concerning the relevant product and ultimately concluding, in light of the lack of consistency in what alleged misrepresentations were communicated and how they were communicated, that individual issues as to causation and reliance would predominate).

The impact of Wells Fargo's statement regarding safety of principal and liquidity requirements was likely the same for all class members—namely, to instill a belief about the nature of the risk of the investment. *See Curtis*, 792 N.W.2d at 858. Further, Wells Fargo has not, at this point in the litigation, negated the common sense inference in this case that the statement in the SLA may have successfully persuaded the class members of the safety of their investments. *See id.* at 859. Because each member of the putative class signed an SLA containing the alleged misrepresentation and because Plaintiff can rely upon direct and circumstantial evidence to prove reliance on a class-wide basis, common questions predominate over questions affecting individual class members. Therefore, the Court finds that class certification on the MCFA claim is appropriate.

## 2.   Superiority

Rule 23(b)(3) further requires the court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3).  The rule provides four nonexclusive factors to help determine if a class

action is superior:

> (A) the class members' interests in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and (D) the likely difficulties in managing a
> class action.

*Id.*  Having considered the relevant factors, the Court finds that a class action is the

superior method of adjudication.

First, as to the class members' interests in individually controlling the prosecution

of separate actions, the Court finds that such interests are minimal and outweighed by the

greater interest in having the claims heard as a class action.  While Wells Fargo points

out that some of the SLP participants are capable of bringing individual claims against

Wells Fargo, Plaintiff notes that smaller investors may not have the financial means to

bring suit against Wells Fargo on their own.  *See AFTRA*, 269 F.R.D. at 355; (Doc. No.

63, at 34).  While it is certainly true that some institutional investors could effectively

bring their own claims, on the whole, the Court finds that a class action is preferable.[6]

Second, that four other lawsuits challenging Wells Fargo's SLP have been filed

does not render a class action here an inferior method of adjudication.  It is true that some

---

[6]     Wells Fargo argues that, because at least eleven participants in the SLP negotiated
choice-of-law provisions, the proposed class members have a strong interest in
controlling their own litigation.  The Court finds, however, that the potential interest of
eleven investors in controlling the prosecution of separate actions does not outweigh the
interest of the more than 100 additional class members in having their claims heard as
part of a class action.

investors have initiated separate actions against Wells Fargo.  Notably, however, in each of the other lawsuits, multiple parties joined together as plaintiffs.  Additionally, as noted earlier, simply because some investors have the resources to devote to a lawsuit of this nature does not mean the same holds true for all members of the putative class.  Rather, class members who may not otherwise have the means to litigate their claims will likely benefit greatly from a class action, and a class action will ensure that class members who are otherwise unaware that they possess a claim will have their rights represented.  Furthermore, minimizing the number of individual lawsuits filed on this basis (which, given the size of the class, could potentially total in the hundreds) promotes the interests of judicial economy and efficiency.[7]

Third, it appears that Wells Fargo does not dispute the desirability of concentrating the litigation of these claims in this forum.  Even if that were not the case, the Court finds that the presence of Wells Fargo, the relevant documents, and many of the administrators of the SLP in Minnesota makes it desirable to concentrate the claims in this forum.

Finally, the Court foresees little difficulty in managing a class action based on the similarity of the contracts and the likely ability of the class members to prove their claims

---

[7]     Litigating this dispute as a class action will foster judicial economy, as certifying this class may resolve the claims of over 100 potential plaintiffs.  A class action will further serve the interests of economy and efficiency given that the parties will likely rely on common evidence to prove their claims with respect to Wells Fargo's management of the portfolios' liquidity and risk.

with generalized evidence.  The Court further notes that class actions of this size and complexity are common.  *See, e.g., AFTRA*, 269 F.R.D. at 355.

In light of the relevant considerations, the Court concludes that a class action is the superior method for adjudicating these claims pursuant to Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3) with respect to its breach of fiduciary duty, breach of contract, and MCFA claims against Wells Fargo.  A class action in this matter will prevent further, duplicative litigation of the relevant claims and will serve to conserve the resources of the Court and the parties by permitting the issues to be litigated in an economical fashion.  The Court further notes that a class action will likely minimize the costs and expenses of litigation without compromising the rights of the parties. Therefore, the Court certifies the proposed class with respect to Counts I, II, and III of Plaintiff's Class Action Complaint (Doc. No. 1, Ex. 1).

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Class Certification (Doc. No. [61]) is **GRANTED** as to Count I (Breach of Fiduciary Duty), Count II (Breach of Contract), and Count III (Violation of Minnesota Prevention of Consumer Fraud Act – Minn. Stat. § 325F.69) of Plaintiff's Class Action Complaint (Doc. No. 1, Ex. 1).

2.      The following class is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

All participants in Defendant Wells Fargo Bank, N.A.'s securities lending program (the "Program") from any time in the period January 1, 2006 to the present who suffered losses due to the Program's purchase and maintenance of high risk, long-term securities.

3.      The parties shall negotiate the content of the class notice. Within fourteen (14) days of the date of this Order, the parties shall submit a joint proposed notice to the Court.  If the parties are unable to agree on the content of the notice, the parties shall each submit a proposed notice, together with briefing not to exceed ten (10) pages per side, within twenty-one (21) days of the date of this Order.

4.      The Court appoints the City of Farmington Hill Employees Retirement System as class representative.

5.      Having considered the requirements of Rule 23(g) of the Federal Rules of Civil Procedure, the Court appoints Glancy Binkow & Goldberg LLP, the Miller Law Firm, P.C., VanOverbeke Michaud & Timmony, P.C., and Zimmerman Reed, PLLP, as class counsel.

Dated:  March 27, 2012                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge