## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **The City of Farmington Hills Employees Retirement System, individually and on behalf of all others similarly situated,** | Civ. No. 10-4372 (DWF/JJG) |
| **Plaintiff,** | |
| v. | **O R D E R** |
| **Wells Fargo Bank, N.A.,** | |
| **Defendant.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion for Clarification (ECF No. 212). The motion seeks clarification of the Court's prior order defining the bounds of appropriate written discovery (s*ee* Order, July 27, 2012, ECF No. 178 ("Written Discovery Order")). Specifically, Defendant seeks permission to depose thirty-eight absent class members with unrealized or realized losses ranging from $1 million to $95 million. Defendant was represented by Dan Millea. Plaintiff The City of Farmington Hills Employees Retirement System was represented by Christopher Kaye. As discussed fully below, Defendant's motion is granted in part and denied in part.

I.      Background[1]

Defendant seeks clarification of the Court's previous order, which allowed Defendant to submit a brief questionnaire to absent class members, as opposed to the discovery Defendant had proposed. Defendant previously sought to serve six interrogatories and two document requests on each absent class member. In reviewing the proposed discovery requests, it appeared to the Court that the written discovery requests could have easily yielded every financial document, note, or memorandum in the absent class members' possession as well as very detailed written responses.

In deciding the written discovery motion, the Court set out the discovery standard but noted that more important than the general discovery standard was the standard courts use in determining whether it is appropriate to take discovery of absent class members. (Written Discovery Order 4, 6.) The Court adopted the widely used three-prong test in which courts consider: "(1) whether the information requested is relevant to the decision of common questions; (2) whether the discovery requests are tendered in good faith and are not unduly burdensome; and (3) whether the information is not available from the class representative." (*Id.* 6 (citations omitted).)

Next, the Court determined that this opt-out class was atypical in that it was composed of a comparatively small number of easily identifiable class members with substantial claims. (*Id.*) The Court specifically acknowledged, "Defendant may be exposed to significant financial

---

[1] The Court has repeatedly recounted the details surrounding these matters and need not do so here. It is sufficient, instead, to note that these lawsuits arise from Defendant's securities lending program ("SLP"), in which Plaintiffs enrolled. Broadly, the SLP allowed plan participants to loan securities to third parties, who would secure the loan with cash collateral. Defendant invested the cash collateral in an effort to increase the return on the loaned securities. Plaintiffs brought suit to recover losses sustained while enrolled in the SLP. Defendant has already defended against two other lawsuits, and is also defending against two other nearly identical lawsuits in this District.

liability from each class member" (*id.*), but the exact magnitude of claimed damages was unknown to the Court. The Class's atypicality was one factor considered in determining whether Defendant would be allowed to submit such expansive written discovery requests.

In addressing the three factors, the Court found the relevance of the discovery requests a neutral factor. The Court determined Defendant could not ask any questions to "determine the nature and scope of any fiduciary duty Defendant owed [the Class]." (*Id.* 7.) On the other hand, the Court found Defendant's attempt to elicit information for the purpose of decertifying the class a valid area of inquiry. (*Id.*) Thus, the first factor was neutral. (*Id.*) Notably, there was no disagreement among the parties regarding the third factor: CFHERS did not have the individualized information Defendant sought. (*Id.* 10-11.)

As for the second factor – whether the discovery was propounded in good faith and the relative burden of the discovery – it was clear that the discovery was grossly overbroad. The Court found that compliance with the discovery as written would require the absent class members to produce "every single document in their investment committee's hands." (*Id.* 8.) The Court also found the timeframe of the requests overbroad. (*Id.* 9) Finally, the technical nature of the responses required by the interrogatories rendered the requests unsalvageable. (*Id.*) The contention interrogatories were such that adequate responses would be "comparable to that of the class representative" in terms of specificity and detail. (*Id.*) In discussing the specificity of the interrogatories, the Court took a dim view of allowing Defendant to subject the absent class members to the same rigors of discovery as the class representative. The Court relied most heavily on the "unredeemable burden" imposed by the discovery in denying Defendant's request to serve such expansive requests. (*Id.* 10.)

The Court acknowledged that some discovery was appropriate, however. Accordingly, and based on the motion as it was framed, the Court delineated the appropriate bounds of written discovery. (*Id.* 11.) The Court allowed "very minimal discovery into whether absent class members' damages were caused by Defendant's allegedly fraudulent actions." (*Id.*) The Court considered a two-page questionnaire of no more than six questions that could be answered easily, without the assistance of outside counsel, to be appropriate. (*Id.*) Those questions were to focus on breaking the causal chain. (*Id.*) Additionally, the Court required the questionnaire to contain a conspicuous disclaimer that compliance with the questionnaire would not have a negative impact on an absent class member's claim. (*Id.*)

Defendant now seeks to take limited depositions of class members with claims over $1 million. There are thirty-eight class members with potential claims ranging from $1 million to $95 million each.[2] (Affidavit of Rory Zamansky ("Zamansky Aff.") Ex. 4.) Defendant asserts the four-hour depositions will be unobtrusive because the class members have not produced any documents and because counsel for Defendant will travel to a convenient location for the deponent. Defendant contends the information it seeks is related to its defense against class-wide reliance. Specifically, Defendant argues it should be allowed to explore the extent of the class's reliance on sources of information other than Defendant's representations.

Plaintiff, on the other hand, offers various arguments in opposition to Defendant's request. First, Plaintiff asserts the Court has fully addressed the issue of class-member depositions. Plaintiff charges Defendant with end-running the time limit for appealing orders or

---

[2] Notably, the three entities with the largest estimated investment loss are Wells Fargo Advantage Funds ($95,730,754.46), Wells Fargo Diversified Investment Funds for Personal Trusts ($21,417,637.30), and Wells Fargo Collective Funds ($17, 243.380.07). The Wells Fargo Foundation also suffered an estimated investment loss of $2,652,221.18. None of the Wells Fargo entities has opted out of the class.

4

seeking reconsideration contained in the Local Rules. *See* D. Minn. LR 72.2(a) (governing appeal of magistrate judge's nondispositive order); D. Minn. LR 7.1(j) (governing motions to reconsider). Plaintiff further asserts depositions of absent class members generally are inappropriate and must not be allowed.

    **II.**    **Discussion**

        **A.**    **Defendant's Procedural Decision**

To begin, the Court does not view this motion as an attempt to circumvent the Local Rules or subversively extend the time for challenging the Written Discovery Order. Contrary to Plaintiff's assessment, the Court did not address depositions in the Written Discovery Order other than to acknowledge that Defendant would seek depositions in the future and that the extent of those depositions was unclear. (Written Discovery Order 2.) Further, Plaintiff asserts the Court foreclosed all other class discovery by allowing Defendant to send a questionnaire to the absent class members. The Court disagrees with Plaintiff's premise.

At the time the Court heard the written discovery motion, the only issues before the Court were six interrogatories and two discovery requests. The Court engaged in a very brief discussion with counsel regarding Defendant's intention to take depositions and, in response, counsel noted it was Defendant's intent to take targeted depositions after evaluating written discovery responses. Indeed, the Court stated the first motion was about written discovery. (Hr'g Tr. 13, filed Sept. 7, 2012, ECF No. 220.) The parties devoted their arguments to the breadth and burden of the written discovery attached as exhibits to their motion papers. At no point did the parties indicate the scope of potential depositions, and thus, any prospective ruling on depositions would have been based on mere speculation and conjecture. Accordingly, the Court

does not view this as an end-run around the Court's ruling but rather the next step in Defendant's attempt to obtain meaningful discovery from the absent class members.

### B.     Propriety of Depositions

Next, the Court addresses the factors governing discovery of absent class members as those factors were set forth in the Written Discovery Order. Again, the parties agree that the third factor, availability from the class representative, is not in dispute. CFHERS has previously admitted, and does not now dispute, it has no relevant information regarding the individual absent class members. Thus, that factor weighs in favor of allowing the depositions to go forward. As for the first factor, relevance to common questions, the analysis here parallels that of the Written Discovery Order. Defendant is seeking information relevant to causation and, as set forth below the scope of depositions could be limited to the topics described to ensure the deposition focuses only on relevant issues.

As with the Written Discovery Order, the main inquiry is whether the burden imposed by the proposed discovery is justified by the benefit or need. The Court finds that, with some limitations, the burden is reasonable. Defendant seeks four-hour depositions at locations convenient to the deponent. None of the deponents have produced any documents nor have any of the class members' outside auditors or investment advisors. Therefore, preparation should not be unduly burdensome.[3]

In reviewing the authority addressing the issue of class discovery and, more specifically, depositions of absent class members, the Court is struck by the broad split in authority. *See, e.g.*, *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 2705089, at *6 (N.D. Cal. July 8,

---

[3] Plaintiff indicated that it took approximately 100 hours to prepare its Rule 30(b)(6) deponent in advance of Defendant's Rule 30(b)(6) deposition. That deposition lasted two full days and covered approximately sixty topics, and thus, preparation for four-hour depositions with much fewer documents should be significantly less burdensome.

2008) ("The law on discovery directed to absent class members is flexible."). Plaintiff cites *In re Publication Paper Antitrust Litigation* ("*Publication Paper*"), No. 3:04 MD 1631 (SRU), 2005 WL 1629633 (D. Conn. July 5, 2005); *In re Worlds of Wonder Securities Litigation* ("*Worlds of Wonder*"), No. C-87-5491 SC (FCSL), 1992 WL 330411 (N.D. Cal. July 9, 1992); and, from this District, *In re Airline Ticket Commission Antitrust Litigation* ("*Airline Ticket*"), 918 F. Supp. 283, 288 (D. Minn. 1996). In *Publication Paper* and *Worlds of Wonder*, the courts denied the class action defendant's attempt to depose absent class members. *Publication Paper*, 2005 WL 1629633, at *1-2; *Worlds of Wonder*, 1992 WL 330411, at *2-3. In *Airline Ticket*, the court left open the option of returning to discuss the propriety of depositions after allowing a written questionnaire. *Airline Ticket*, 918 F. Supp. at 288 ("Defendants . . . may not, *at this time*, conduct follow-up depositions of survey respondents." (emphasis added)). None of the cases cited have established a per se rule barring depositions of absent class members, however.

On the other hand, Defendant cites *In re National Western Life Insurance Deferred Annuities Litigation* ("*National Western*"), No. 05-CV-1018-JLS (WVG), 2010 WL 4809330 (S.D. Cal. Nov. 19, 2010); *Town of New Castle v. Yonkers Contracting Co.*, No. 88 Civ. 2952 (CES), 1991 WL 159848 (S.D.N.Y. Aug. 13, 1991); *Bruhl v. PriceWaterhouseCoopers International*, No. 03-23044-Civ, 2010 WL 5090207 (S.D. Fla. Dec. 8, 2010); and, from this District, *Mooney v. Allianz Life Insurance Co. of North America*, No. 06-545 (ADM/FLN), 2009 WL 511572 (D. Minn. Feb. 26, 2009). *Bruhl* is easily distinguishable as being based on a statute which required proof of reliance as a necessary element of federal securities claims. *Bruhl*, 2010 WL 5090207, at *1. Therefore, *Bruhl* is not persuasive. As for *Town of New Castle*, the court found that, under certain circumstances, discovery of individual class members is appropriate, but not where the only goal is to establish the extent of damages or limit the amount of claims.

*Town of New Castle*, 1991 WL 159848, at *1-2. In *National Western*, a RICO case, the court allowed depositions of absent class members after the opt-out period had expired, in limited number, length, and location. *National Western*, 2010 WL 4809330, at *2 *rev'd in part on other grounds and sustained in relevant part by* 2011 WL 3438186, at *1-2 (S.D. Cal. Jan. 19, 2011) (reviewing magistrate judge's order). In *Mooney*, the court allowed depositions following its first denial of the defendant's motion to decertify the class. *Mooney*, 2009 WL 511572, at *4.

As is evident from the above recitation of cases, the authority on this issue is wide ranging. Instead of a per se rule allowing or barring discovery from absent class members, courts evaluate the particulars of each case and, more importantly, of the discovery requests. It is a fact-intensive inquiry, which, to be sure, begins with a presumption against allowing the discovery. Discovery is appropriate, however, where the party requesting discovery makes a "strong showing." *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980). The Court has already acknowledged that some discovery from absent class members is appropriate to enable Defendant to mount a meaningful defense. (*See* Written Discovery Order 11.)

Here, consistent with other courts facing similar issues, the Court considers the depositions to be less intrusive than the extraordinarily broad interrogatories and document requests addressed in the Written Discovery Order. *See E.E.O.C. v. Dawes Cnty. Neb.*, No. 8:07CV376, 2008 WL 2513755, at *2-3 (D. Neb. June 19, 2008) (allowing depositions "in lieu of excessive interrogatories") (citation omitted); *Rotoworks Int'l Ltd. v. Grassworks USA, LLC*, No. 07-5009, 2007 WL 2680556, at *3 (W.D. Ark. Sept. 7, 2007) ("Finally, Interrogatory No. 2 seeks discoverable information, but asks for it in such sweeping terms that production may be burdensome and deposition appears a more appropriate discovery vehicle."). As the Court previously noted, responding to the written discovery requests would have required producing

8

more specific information than what was required of the class representative. (Written Discovery Order 9.) The topics contained in these deposition notices, however, are much more narrow and are small enough in number that the Court may limit their scope to a manageable, relevant, less burdensome group of topics.

Furthermore, there is some support for the proposition that, because the class members are non-parties, as Plaintiff argued, (*see* Written Discovery Order 5-6), interrogatories are inappropriate. *See Publication Paper*, 2005 WL 1629633, at *1. Depositions of non-parties, however, are allowed. *See Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 535 (N.D. Ga. 1972) (allowing party to use nonparty discovery devices on absent class members).

The fact remains that this is a very atypical class. The existence of thirty-eight class members claiming an excess of $1 million in damages each is rare, to say the least. In the far more typical class action, the class members suffered much smaller damage on the order of hundreds of dollars, not hundreds of thousands. Accordingly, on the facts of this case, disallowing all depositions of absent class members cannot comport with a general sense of fairness, especially if the Court may reconcile the burden imposed by such discovery.

    **C. Necessary Limitations**

Defendant's request to conduct thirty-eight depositions at this late date, however, is not appropriate. Allowing that volume of depositions would impose too great a delay and such a delay is unwarranted. The first step in reining in the burden of absent class member depositions is to limit the number of depositions. After reviewing Exhibit 4 to the Affidavit of Rory Zamansky, which contains a list of claimed damages, the Court concludes that Defendant may issue deposition notices to ten class members seeking an excess of $1 million. Additionally, if

Plaintiff intends to call class members to testify at trial, to the extent they have not been deposed, Defendant may depose those class members. *See Tierno*, 2008 WL 2705089, at *6-7.

The second method of limiting the burden of the depositions is to limit their topics to an acceptable scope. The Court first notes, even when discovery of absent class members is allowed, class members should not be subject to the same rigors of discovery as the class representative. The Court finds that Topics 1, 3,[4] 4, 7, and 11 are appropriate for depositions of absent class members. The remainder of the Topics are contained in the negotiated questionnaire authorized by the Court's July 27, 2012 Order. Moreover, the appropriate time period is January 1, 2006 to December 31, 2009.

Under no circumstances, however, may Defendants include Topic 10, which seeks information that was not disclosed and regarding what the absent class member would have done with the information had it been disclosed. Topic 10 has no relevance to the class's reliance on *other* sources of information or reliance on Defendant's actual representations. The parties should continue to meet and confer regarding the questionnaire topics in an effort to disseminate the questionnaire to the class as soon as possible.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Clarification (ECF No. 212) is **GRANTED** in part and **DENIED** in part as follows:

    (1)    Defendant may depose ten absent class members with claims greater than $1 million;

    (2)    The appropriate scope of the depositions is limited as stated fully herein;

---

[4] While it is not defined as such in the deposition notice, the term "Business Trust" shall be limited to Wells Fargo's SLP's Business Trust.

 (3) Absent an agreement among the parties, Defendant's ten class member depositions should take place by November 21, 2012; and

 (4) The Third Amended Pretrial Scheduling Order (ECF No. 191) is modified to extend the discovery deadline for the limited purpose of finishing the depositions authorized herein, as well as any depositions noticed by Plaintiff, to November 21, 2012.

Dated: September 21, 2012      s/ *Jeanne J. Graham*
                 JEANNE J. GRAHAM
                 United States Magistrate Judge