# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

THE CITY OF FARMINGTON HILLS
EMPLOYEES RETIREMENT SYSTEM
AND THE BOARD OF TRUSTEES OF
THE ARIZONA STATE CARPENTERS
PENSION TRUST FUND AND THE
ARIZONA STATE CARPENTERS
DEFINED CONTRIBUTION TRUST
FUND, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

vs.

WELLS FARGO BANK, N.A.,

      Defendant.

Court File No. 0:10-cv-04372-DWF-JJG

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    SUMMARY OF SETTLEMENT TERMS ................................................. 2

III.   PROCEDURAL HISTORY ...................................................................... 3

       A.    Initiation of the Action ................................................................. 3

       B.    Class Certification ........................................................................ 4

       C.    Wells Fargo's Petition to Appeal the Class Certification Order .................. 5

       D.    Wells Fargo's Motion for Decertification .................................... 5

       E.     Cross-Motions for Summary Judgment ....................................... 6

       F.    The Re-Inclusion of the ERISA Entities in the Class ................... 7

       G.    Wells Fargo's Motion for Reconsideration of the Court's Refusal to
             Decertify the Separately Managed Accounts ................................. 7

       H.    Substantial Pre-Trial Proceedings and Trial Preparation ............. 8

       I.    Settlement Negotiations ................................................................ 8

IV.    PLAINTIFFS' SUBSTANTIAL DISCOVERY AND INVESTIGATION ............ 9

V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............... 11

       A.    Standards and Procedure: Class Action Settlements Are Favored.............. 11

       B.    The Proposed Settlement, Which Was the Result of Arms-Length
             Negotiations Among Experienced Counsel, Is Presumptively Valid ......... 13

       C.    The Proposed Settlement Is Fair, Reasonable, and Adequate as
             Required Under Fed. R. Civ. P. 23(e) ......................................... 15

1.     The Settlement Is Fair and Reasonable When Weighed Against the Strengths and Weaknesses of the Claims ..................... 16

2.     Defendant's Financial Condition Supports Settlement .................... 18

3.     Risk and Expense of Further Litigation (*i.e.*, Trial and Any Subsequent Appeals) Weighs in Favor of Approval ........................ 18

VI.    THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE ........... 19

VII.   PROPOSED SCHEDULE OF EVENTS ............................................... 21

VIII.  CONCLUSION ...................................................................... 21

# TABLE OF AUTHORITIES

Cases

*Alexander v. Nat'l Football League*,
   No. 4-76-CIVIL-123, 1977 WL 1497 (D.Minn. Aug. 1, 1977) ................................... 16

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013) ........................................................................................ 6

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................ 16

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ......................................................................... 15, 20

*Grier v. Chase Manhattan Auto Fin. Co.*,
   No. Civ. A. 99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ................................. 13

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ................................................................... *passim*

*Holden v. Burlington Northern, Inc.*,
   665 F. Supp. 1398 (D.Minn. 1987) ................................................................. 12, 16

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
   410 F. Supp. 659 (D.Minn. 1974) ...................................................................... 13

*In re Employee Benefit Plans Sec. Litig.*,
   No. 3-92-708, 1993 WL 330595 (D.Minn. June 2, 1993) ..................................... 13, 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................................... 12

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ......................................................................... 12, 13

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
   631 F. Supp. 2d 1151 (D.Minn. 2009) .................................................................. 18

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) ................................................................ 15, 16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D.Minn. Feb. 27, 2013) .............. 14

*Liddell by Liddell v. Bd. of Educ. of City of St. Louis*,
    126 F.3d 1049 (8th Cir. 1997) ................................................................ 11

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
    921 F.2d 1371 (8th Cir. 1990) ............................................................ 12, 14

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................ 20

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................................ 14

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .......................................................... passim

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ............................................................ 15, 16

*Welsch v. Gardebring*,
    667 F. Supp. 1284 (D.Minn. 1987) .................................................... 13, 16

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D.Minn. 1993) ........................................................ 11

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D.Minn. 1993) .................................................... 13, 16

*Zilhaver v. UnitedHealth Grp., Inc.*,
    646 F. Supp. 2d 1075 (D.Minn. 2009) ......................................... 15, 16, 18

Statutes

Minn. Stat. §§ 549.191, 549.20 ...................................................................... 5

Rules

Fed. R. Civ. P. 23(e) .......................................................................... 12, 19

Fed. R. Civ. P. 23(e)(1) ................................................................................ 21

Fed. R. Civ. P. 23(e)(2) ................................................................................ 13

Other Authorities

Newberg on Class Actions (4th ed. 2002) § 11.24 ......................................... 13

This Memorandum is submitted in support of Preliminary Approval of the Settlement reached between the Named Plaintiffs, The City of Farmington Hills Employees Retirement System ("Farmington") and The Board of Trustees of the Arizona State Carpenters Pension Trust Fund and the Arizona State Carpenters Defined Contribution Trust Fund ("Arizona Plaintiffs" or "Arizona Carpenters"), individually and on behalf of the certified Class (collectively, "Plaintiffs"), and Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") (collectively, the "Parties"). A copy of the Settlement Agreement, together with exhibits, is attached as Exhibit 1 to the concurrently-filed Declaration of Peter A. Binkow ("Binkow Decl.").[1]

## I.     INTRODUCTION

The proposed $62.5 million Settlement resolves the class action claims pending in this Court against Wells Fargo. In determining whether to grant Preliminary Approval, the issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that Notice of the proposed Settlement should be provided to the Class and that a hearing be scheduled for Final Approval. As discussed herein, the Settlement meets this standard and, therefore, the Court should grant Preliminary Approval.

As set forth herein, the proposed Settlement is the result of extensive arm's-length negotiations between the Settling Parties which were overseen by retired U.S. District Court Judge Layn R. Phillips and is unquestionably fair, reasonable, and adequate, and

---

[1] Unless otherwise noted, all capitalized terms herein have the same meaning as set forth in the Settlement Agreement.

deserves to be preliminarily approved. The Settlement confers substantial benefits upon the Class in a case of considerable complexity and costs, and in the face of hard-fought litigation by Wells Fargo and the attendant risk of a defense verdict at trial – a scenario the Court saw play out in a related case less than one year ago. As such, Plaintiffs respectfully request that the Court enter an Order:

(1) preliminarily approving the Settlement as embodied in the Settlement Agreement;

(2) approving the form, content, and manner of the Notice to be sent to Class Members concerning the Settlement (the proposed Notice is attached as Exhibit B to the Settlement Agreement) and directing Notice to be sent to the Class as set forth in the Settlement Agreement;

(3) preliminarily approving the proposed Plan of Allocation (the Plan of Allocation is attached as Exhibit D to the Settlement Agreement); and

(4) setting the date for a Final Approval Hearing to be held approximately seventy-five (75) days from the date of entry of the Preliminary Approval Order, where the Court will consider Final Approval of the Settlement, as well as the amount of Attorneys' Fees and Litigation Expenses to award to Class Counsel, and the amount of any Service Awards to award to the Named Plaintiffs.

A proposed Preliminary Approval Order is attached as Exhibit A to the Settlement Agreement, and filed concurrently herewith (*see* Binkow Decl. Exhibit 1-A).

## II.    SUMMARY OF SETTLEMENT TERMS

The Settlement provides a $62.5 million Gross Settlement Fund, to be deposited by Wells Fargo into a Settlement Escrow Account within fourteen days following the entry of a Preliminary Approval Order in this case. Class Counsel will request attorneys' fees of 33.3% of the Gross Settlement Fund, reimbursement of approved Litigation Expenses in an amount that will not exceed $2.45 million, and Service Awards of

$50,000 to each Farmington and Arizona Carpenters (for a total of $100,000 in Service Awards), to be paid from the Gross Settlement Amount.[2] The Settlement Agreement also provides for payment of Administration Costs from the Gross Settlement Fund, which costs are currently estimated not to exceed $15,000. The Net Settlement Fund available for distribution to Approved Claimants will then be distributed according to the Plan of Allocation, attached as Exhibit D to the Settlement Agreement.

Wells Fargo has informed Class Counsel that it intends to terminate the Wells Fargo Securities Lending Program for all participants in 2015 (regardless of whether they are Class Members) pursuant to the termination provisions in the participants' respective Securities Lending Agreements. The Settlement Agreement therefore sets forth exit procedures for the 14 Class Members who are currently participants in the Program. This procedure utilizes the settlement proceeds to provide exiting Class Members with an offset against the sum they will otherwise be required to pay as they exit the Program. *See* Settlement Agreement ¶¶32-39.[3]

## III.    PROCEDURAL HISTORY

### A.    Initiation of the Action

On October 15, 2010, Farmington initiated this action by serving a Class Action Complaint on Wells Fargo, which was initially filed in Minnesota state court. The complaint asserted the following six claims against Wells Fargo: (1) breach of fiduciary

---

[2] Class Counsel will request payment of attorneys' fees, Litigation Expenses, and Service Awards in conjunction with Final Approval.

[3] Class Counsel understand that Wells Fargo will be filing a memorandum in support of preliminary approval and an affidavit confirming the Program termination decision.

duty; (2) breach of contract; (3) violation of the Minnesota Consumer Fraud Act ("MCFA"); (4) violation of the Minnesota Unlawful Trade Practices Act ("UTPA"); (5) violation of the Minnesota Deceptive Trade Practices Act ("DTPA"); and (6) civil theft. On October 26, 2010, Wells Fargo removed the Action to the District of Minnesota.

### B. Class Certification

On September 23, 2011, Farmington filed a Motion for Class Certification. The Court granted the motion on March 27, 2012, certifying breach of fiduciary duty, breach of contract and Minnesota Consumer Fraud Act claims, appointing Farmington as the Class Representative, and appointing the law firms Glancy Binkow & Goldberg LLP ("GBG"), The Miller Law Firm P.C. ("Miller Firm"), Zimmerman Reed PLLP, and VanOverbeke Michaud & Timmony P.C. as Class Counsel. The Court defined the class as: "All participants in Defendant Wells Fargo Bank, N.A.'s securities lending program (the 'Program') from any time in the period January 1, 2006 to the present who suffered losses due to the Program's purchase and maintenance of high risk, long-term securities," and ordered notice be disseminated to the Class Members.

The initial class notice stated that: "[i]f you do not request exclusion from the class on or before July 31, 2012 [or November 19, 2012] [4], (60 days after the date of this Notice) and you fall within the definition of the Class, you will be bound by any final

---

[4] Subsequent to the mailing of the initial Class notice, Wells Fargo informed Class Counsel that there were certain additional Class Members who had yet to be provided notice. Notice was sent to those additional Class Members in September 2012.

judgment or settlement in this Class Action."[5]   The Class Members subject to this Settlement are identified in Exhibit D(1) to the Settlement Agreement.

On November 2, 2012, Farmington filed a First Amended Class Action Complaint (the "FAC"). The FAC asserted the same claims against Wells Fargo as the Class Action Complaint but also asserted a claim for punitive damages pursuant to Minn. Stat. §§ 549.191 and 549.20.

### C.    Wells Fargo's Petition to Appeal the Class Certification Order

On April 10, 2012, Wells Fargo filed a petition in the Eighth Circuit to appeal the Order granting Class Certification.   Among other things, Wells Fargo argued that the Court erred when it determined that Plaintiffs' claims were susceptible to classwide, common proof and determination.   Plaintiffs filed their answer to the petition on April 20, 2012, and the Eighth Circuit issued its Judgment denying the petition on May 7, 2012.

### D.    Wells Fargo's Motion for Decertification

On April 5, 2013, Wells Fargo moved for full decertification of the Class.   Wells Fargo attacked the Class on many fronts, including that: (1) Farmington was not a typical

---

[5] Forty-one recipients of the initial class notice submitted Requests for Exclusion, leaving one hundred (100) members in the class at that time.  On August 27, 2013, the Settling Parties stipulated to the exclusion of the following seven (7) entities from the Class: (1) IHC Foundation Inc.; (2) Mid-West Life Insurance Co.; (3) The Chesapeake Life Insurance Co.; (4) The Mega Life & Health Insurance Co.; (5) United Group Reinsurance, Inc.; (6) SIT/Kim Global Fund LLC – International; and (7) SIT/Kim International Fund LLC – International.  On September 17, 2013, the Court entered an order excluding those seven class members from the Class.  Furthermore, on March 26, 2014, the Settling Parties stipulated to amending the Class definition to exclude Wells Fargo Bank, N.A. as a Class Member.  After these exclusions, the number of remaining Class Members in the case was ninety-three (93).  *See* Exhibit D(2) to the Settlement Agreement for a list of all excluded entities.

or adequate Class Representative; (2) recent Supreme Court precedent in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) required decertification under Rule 23(b)(3); (3) entities who participated in the Securities Lending Program outside of the Business Trust (the "Separately Managed Accounts") should be excluded from the Class; and (4) the ERISA Class Members should be decertified because the certified claims were preempted by ERISA, and that Farmington, which is not governed by ERISA, lacked typicality and adequacy as to the ERISA Class Members. After substantial briefing and oral argument, on September 17, 2013, the Court granted Wells Fargo's decertification motion with respect to the ERISA entities, but otherwise denied the motion. Dkt. No. 386.

### E. Cross-Motions for Summary Judgment

Simultaneously with Wells Fargo's motion for decertification, the Parties brought cross motions for summary judgment. Farmington moved for summary judgment on a number of Wells Fargo's Affirmative Defenses, which motion was granted in part and denied in part. In support of its motion for summary judgment, Wells Fargo again argued ERISA preemption (which the Court found to be moot based on its decertification of those entities from the Class). Wells Fargo also argued that Farmington could not establish the elements of its civil theft, DTPA, UTPA, and MCFA claims. Finally, Wells Fargo argued that Farmington could not establish its core claim: loss resulting from a breach of fiduciary duty. Significantly, and again after substantial briefing and oral argument, the Court denied Wells Fargo's motion for summary judgment as to Farmington's breach of fiduciary duty, MCFA, DTPA, and UTPA claims.

### F. The Re-Inclusion of the ERISA Entities in the Class

On October 4, 2013, Farmington moved to file a Second Amended Complaint and add an additional Class Representative. The Second Amended Complaint ("SAC") included the same six counts as those in the FAC and added as a named Plaintiff the Arizona Plaintiffs. All Named Plaintiffs asserted their claims on behalf of themselves and the Class, and the Arizona Plaintiffs also asserted their claims on behalf of "all the ERISA entities that were decertified by the Court." The SAC was filed on October 11, 2013. On January 14, 2014, the Court appointed the Arizona Plaintiffs as Class Representatives for the ERISA Class Members and held that the claims of the ERISA Class Members were limited to Count I of the SAC: breach of fiduciary duty.[6]

### G. Wells Fargo's Motion for Reconsideration of the Court's Refusal to Decertify the Separately Managed Accounts

On November 5, 2013, Wells Fargo again attacked the certification ruling when it moved for reconsideration of the Court's Decertification Order as it related to the Class Members who participated in the Program through Separately Managed Accounts. In its motion, Wells Fargo argued that Plaintiffs would not be able to prove the claims of Business Trust and non-Business Trust Class Members together with common, class-wide evidence. After thorough briefing and oral argument, the Court denied the reconsideration motion on January 14, 2014.

---

[6] Class Counsel sent the ERISA Class Members notice of both the decertification of ERISA entities from the Class, as well as their subsequent re-inclusion in the Action.

### H. Substantial Pre-Trial Proceedings and Trial Preparation

With the scope of the Class and the claims finally firmly established by early 2014 and the trial start date set for April 14, 2014, the Parties undertook considerable pre-trial efforts, including both written and oral advocacy in numerous pre-trial motions, as well as extensive behind-the-scenes trial preparation. For example, Plaintiffs filed eleven motions *in limine* and opposed Wells Fargo's twelve motions *in limine*. Other pre-trial filings included briefing submitted by both Parties regarding differing proposed damages methodologies, the structure of the class-wide trial, the use of a trifurcated procedure, and Plaintiffs' subsequent motion to modify the trial plan.

Substantial additional written advocacy was exchanged between and negotiated by the Parties, including proposed jury instructions and the statements of the case. Class Counsel also expended considerable efforts preparing for *voir dire* and opening statements, performing mock percipient and expert witness examinations, conducting focus group testing of opening argument and key witness testimony, and preparing trial exhibits and demonstratives. Further, in mid-March 2014, nine attorneys from Class Counsel's out-of-town firms moved to St. Paul in anticipation of the April 14th trial start date, with the expectation of remaining on site for several months.

### I. Settlement Negotiations

The Settling Parties participated in two formal mediation sessions, first in July 2013 (during the related *Blue Cross v. Wells Fargo* trial before this Court), and again in March 2014, both of which were presided over by experienced mediator and retired U.S. District Court Judge Layn Phillips. While neither session resulted in the immediate

settlement of the Action, the Parties' continuing discussions and negotiations, with the aid of Judge Phillips, ultimately resulted in an agreement in principle executed on April 12, 2014.

## IV. PLAINTIFFS' SUBSTANTIAL DISCOVERY AND INVESTIGATION

All of the foregoing procedural steps were possible only after major discovery and investigation efforts by Class Counsel. During the course of the litigation, Class Counsel conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Action. Class Counsel analyzed evidence adduced during their investigations and in discovery, and researched the applicable law with respect to the claims of Named Plaintiffs and the Class against Wells Fargo, as well as the potential defenses thereto.

Prior to filing the complaint, counsel conducted a thorough investigation of the available materials related to: Wells Fargo's Securities Lending Program specifically; securities lending generally; the investment categories at issue here, such as structured investment vehicles; and the specific securities at issue in the case.

Plaintiffs were aggressive in seeking discovery from Wells Fargo. Class Counsel propounded three sets of interrogatories, 91 requests for production of documents, and 27 requests to admit. These came on top of the extensive body of discovery from the previous *Workers' Compensation Reinsurance Association v. Wells Fargo Bank, N.A.*, 62-CV-08-10825 ("*WCRA*") and *COPIC Insurance Company v. Wells Fargo & Company*, Dist. Colo., 09-CV-00041, and the later-filed *Blue Cross and Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, 11-CV-2529 ("*Blue Cross*") and *Securian*

*Financial Group, Inc. v. Wells Fargo Bank, N.A.*, 11-CV-01957 cases, all of which required review.

The result was an exceptionally document-intensive case. Plaintiffs' Counsel produced and/or reviewed over 7,087,500 pages of documents. In total, Wells Fargo produced approximately 6,817,281 pages. Much of this consisted of complex financial documentation, including extensive native-formatted data that required expert analysis. Plaintiffs produced approximately 133,661 pages. Of course, countless more documents required review in order to isolate responsive materials, which in the case of Farmington required the painstaking assessment of the municipality's extensive body of public records. And, third parties produced approximately 136,564 pages. Once again, much of this consisted of information-dense financial records.

The materials' complexity, as well as the case's unique nature, lent significance to the proposed expert witnesses. Plaintiffs propounded three expert reports totaling 563 pages. These included substantial computation of Class-Member-by-Class-Member losses, based on voluminous account information produced by Wells Fargo. Likewise, Wells Fargo provided four expert reports with a total of 720 pages.

Plaintiffs' Counsel took, defended, and/or had access to more than 90 depositions. Counsel took at least 20 depositions of Wells Fargo's current or former employees or third-party service providers and deposed all four of Wells Fargo's proffered experts. Counsel also defended 17 depositions. Three of these were of Plaintiffs' experts. Moreover, ten were of absent class members whose depositions Plaintiffs had argued against, and each of which required counsel to become closely familiar with the specifics

of the deposed Class Member.  All of this was on top of the more than 30 depositions that Counsel reviewed from previous litigations.  In total, these depositions resulted in approximately 22,725 pages of recorded testimony and the inclusion of approximately 2,399 exhibits.  This deposition testimony came in addition to the extensive trial testimony that required review.  Early on, Plaintiffs' counsel reviewed the 5,677 page *WCRA* trial transcript.  During the 2013 *Blue Cross* trial, Plaintiff's counsel attended the daily sessions over their seven week duration, and during the trial and afterwards carefully reviewed the 7,391 page transcript.

Unsurprisingly for a case of this complexity, Plaintiffs' Counsel was forced to deal with numerous discovery-related disputes.  In total, the two sides filed at least ten motions related to such disputes, including several under the Court's Informal Dispute Resolution process as well as formal motions.  Disputes included the appropriate scope of Wells Fargo's production regarding class-wide damages and Plaintiffs' efforts to protect absent class members from Wells Fargo's proposed discovery of them.  In addition to the motion practice itself, each such motion was preceded by often extensive meet-and-confer efforts.

## V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.     Standards and Procedure: Class Action Settlements Are Favored

Settlement is the preferred means of resolving litigation, particularly in the class action context.  *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through

settlement is particularly strong in the class action context."); *Holden v. Burlington Northern, Inc*., 665 F. Supp. 1398, 1405 (D. Minn. 1987). Thus, the Eighth Circuit has recognized that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)).

By supporting the settlement of complex class-action disputes, the judicial system can minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risks of trial to both parties. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing cases); Newberg on Class Actions (4th ed. 2002) ("Newberg") at § 11.41.

The parties settling a class action brought in federal court must seek the approval of the settlement from the court. Fed. R. Civ. P. 23(e); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions* ("*Prudential*"), 148 F.3d 283, 307 (3d Cir. 1998) (cited by 2003 Amendments to Rule 23(e)). Under Rule 23(e) of the Federal Rules of Civil Procedure, preliminary approval is the first of a two-stage process where the Court must determine whether the settlement appears to fall within the range of reasonableness and whether the proposed notice plan meets the requirements of due process.

### B. The Proposed Settlement, Which Was the Result of Arm's-Length Negotiations Among Experienced Counsel, Is Presumptively Valid

The proposed Settlement is presumptively fair, reasonable and adequate, as it was reached on the eve of trial, after substantial discovery and litigation, and it was the result of arms-length negotiations between experienced counsel.

In considering the motion currently before it, the Court must make a preliminary determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Prudential*, 148 F.3d at 316. Although the decision to approve a proposed settlement is committed to the Court's sound discretion, courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto. Fin. Co.*, No. Civ. A. 99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993); Newberg § 11.24. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.* ("*Benefit Plans*"), No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993).[7]

Indeed, this Court should begin its analysis with the presumption that the proposed Settlement is fair and valid. Courts have held terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiations

---

[7] *See also Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (giving "great weight" to opinions of experienced counsel); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) (same).

at an appropriate stage in the litigation, when they can intelligently evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., Benefit Plans*, *supra*, *id*. ("[I]ntensive and contentious negotiations likely result in meritorious settlements. . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig*., No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D.Minn.  Feb. 27, 2013) ("Settlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .") (citing *Little Rock Sch. Dist.*, 921 F.2d at 1391) (recognizing that settlements are presumptively valid) (quotations omitted)); *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 852 (1999) (courts "may take a settlement amount as good evidence of the maximum available if . . . parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining, unhindered by any considerations tugging against the interests of the parties ostensibly represented in the negotiation.").

The extent of the discovery, motion practice, and arm's-length negotiations in this action – which has generated 650 docket entries over a span of three and one-half years – has been more than sufficient to support a presumption of fairness of this Settlement, which was ultimately reached only two days before trial.  To be sure, Plaintiffs and Defendant had more than ample opportunity to test and refine their legal theories during motion practice, to assess the strengths and weaknesses of their positions, and to balance the potential value of Plaintiffs' claims against the substantial risks and expense of trial.

Moreover, when, as here, the parties are represented by experienced counsel and no evidence of collusion or bad faith exists, the judgment of the litigants and their

counsel concerning the adequacy of the settlement is entitled to deference. *See Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1178 (8th Cir. 1995). The extent and nature of the negotiations conducted by both Class Counsel and Defense Counsel, their experience litigating complex class actions, the arms-length nature of the settlement negotiations, and the fact that they were overseen by Judge Phillips (Ret.) – who also mediated similar settlements of securities lending class actions involving JP Morgan Chase and the Bank of New York Mellon – all weigh in favor of preliminary approval of the Settlement.

## C. The Proposed Settlement Is Fair, Reasonable, and Adequate as Required Under Fed. R. Civ. P. 23(e)

In addition to evaluating the propriety of the negotiations, courts consider four factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (citing *Grunin*, 513 F.2d at 124); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Zilhaver v. UnitedHealth Grp., Inc*., 646 F. Supp. 2d 1075, 1079 (D. Minn. 2009).

At the preliminary approval stage, the fourth factor is not yet relevant. At this stage, the three relevant factors all weigh in favor of granting preliminary approval of the Settlement.

### 1. The Settlement Is Fair and Reasonable When Weighed Against the Strengths and Weaknesses of the Claims

"The single most important factor in determining whether a settlement is fair, reasonable and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Zilhaver*, 646 F. Supp. 2d at 1079 (quoting *Van Horn*, 840 F.2d at 607); *see also In re Wireless*, 396 F.3d at 933 (citing *Petrovic*, 200 F.3d at 1150). The Court must balance the risks and benefits of litigation against immediate recovery for the class members. *Grunin*, 513 F.2d at 124; *Petrovic*, 200 F.3d at 1150. In evaluating this factor, however, courts are "not to reach any conclusions as to the merits . . . nor . . . substitute [their] opinion" for that of counsel or the class members. *Benefit Plans*, 1993 WL 330595, at *4 (citing *Holden*, 665 F. Supp. at 1407). Instead, courts give great weight to experienced counsels' judgment when evaluating the merits of a settlement. *Welsch*, 667 F. Supp. at 1295 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[8]

Here, the framework of the proposed Settlement will result in Class Members recovering a portion of the out-of-pocket investment losses they suffered, or receiving a credit toward the collateral shortfall or cash required to exit the Program, notwithstanding

---

[8] *See also Alexander v. Nat'l Football League*, No. 4-76-CIVIL-123, 1977 WL 1497, at *12-13 (D.Minn. Aug. 1, 1977) ("the court does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement . . . Rather, 'the very purpose of compromise is to avoid the delay and expense of such a trial'" (quoting *Grunin*, 513 F.2d at 124)); *White*, 836 F. Supp. at 1477 (same); *Holden* 665 F. Supp. at 1403 (recognizing district court's approval was not expression of its opinion about merits); *Grunin*, 513 F.2d at 123 ("neither the trial court in approving the settlement nor this Court in reviewing the approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute") (internal quotation omitted).

Wells Fargo's significant defenses and the substantial risks the Class would face at trial. Moreover, the claims process is straightforward and requires little to no effort from Class Members, with Authorized Recipients' Recognized Claims being determined from data already in the possession of Class Counsel and Wells Fargo. Class Members are not required to provide any supporting documentation to prove a right to recovery.

Absent this Settlement, however, Class Members' ultimate recovery of any amount of their losses was very uncertain. Wells Fargo had numerous defenses which would have raised complicated and difficult factual and legal questions at trial.[9] As the Court knows, these very defenses resulted in a jury verdict in Wells Fargo's favor in the related *Blue Cross* action less than one year ago before the same Court and with jurors drawn from the same jury pool. Moreover, even if Plaintiffs were to prevail at trial, there is no doubt that Wells Fargo would have appealed any judgment in favor of Plaintiffs, as well as class certification. These substantial risks and inevitable delays, and the strong possibility that Class Members could recover nothing at all as a result of the trial or subsequent appeal, were seriously considered and balanced with the potential value of Class Members' claims in arriving at the Settlement.

In addition, Wells Fargo will be shutting down its Securities Lending Program and any remaining participants will be required to exit the Program whether they are Class Members or have opted out of the Class. That Program termination will take place regardless of this Settlement Agreement. However, the Settlement provides a defined

---

[9] Wells Fargo has denied and continues to deny that it has committed any act or omission giving rise to any liability or violation of law, and is entering into this Settlement solely to eliminate the burden, expense, and distraction of further litigation.

framework and structure for remaining Class Member exits that allows them to use their Settlement proceeds to offset the cash otherwise required to make up any collateral shortfalls as they exit the Program. As such, this factor weighs in favor of preliminary settlement approval.

### 2. Defendant's Financial Condition Supports Settlement

Courts also examine the compensation provided in the settlement and the defendant's ability to pay when determining whether the settlement is fair, reasonable and adequate. *See Petrovic*, 200 F.3d at 1152 (citing *Grunin*, 513 F.2d at 124). In this case, Wells Fargo has agreed to a cash settlement and there is no reason for concern that Wells Fargo will be unable to pay the full amount of the Gross Settlement Fund.

### 3. Risk and Expense of Further Litigation (*i.e.*, Trial and Any Subsequent Appeals) Weighs in Favor of Approval

Finally, the Court must evaluate whether the expense and complexity of further litigation weighs in favor of approving the settlement. Where, as here, continued litigation would mean the risk and expense of a lengthy trial, the possibility of another defense verdict for Wells Fargo, and likely appeals of any pro-Plaintiff verdict, this factor weighs in favor of settlement approval. *See Zilhaver*, 646 F. Supp. 2d at 1080; *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009).

In addition, the proposed Settlement does not give undue preferential treatment to the Class Representatives over other Class Members. The Class Representatives will receive the same level of benefits, based on the same Plan of Allocation methodology, as

the Class Members (Court-approved Service Awards for the substantial work performed by the Class Representatives aside).

Finally, the proposed Settlement provides for reasonable attorneys' fees and reimbursement of Litigation Expenses. Class Counsel will request up to 33.3% of the Gross Settlement Fund in attorneys' fees in addition to reimbursement of Litigation Expenses in an amount that will not exceed $2.45 million. As will be shown in the Final Approval process when Class Counsel file their application for Court approval of fees and expenses, this is a reasonable fee request given the scope of this litigation, the work already completed, and the work that will be needed to finalize this Settlement. Given the significant amount of work done in this case over the nearly three-and-one-half years this litigation has been pending, the amount of risk and costs attendant with the litigation, trial, and likely future appeals, and the benefits provided to the Class Members, the requested fees will be shown to fall well within the range of reasonableness.[10] Thus, on preliminary evaluation, the Settlement is presumptively fair and should be preliminarily approved.

In short, all relevant factors weigh in favor of approving this settlement.

## VI.    THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE

Fed. R. Civ. P. 23(e) also requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Settlement notice

---

[10] Class Counsel's lodestar to date will far exceed a fee award of 33.3% of the Settlement Amount, meaning a lodestar analysis will confirm that Class Counsel will receive a negative multiplier on its three-and-one-half year investment, hardly a "windfall" to Class Counsel.

must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Put another way, notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin*, 513 F.2d at 121). There is no requirement that the notice provide "a complete source of information" or an exact amount of recovery for each class member. *Id.* (citing *DeBoer*, 64 F.3d at 1176).

These standards are unquestionably satisfied by the proposed Notice. As set forth in the Settlement Agreement, the Settlement Administrator would disseminate Notice to all eligible Class Members, using a direct mailing procedure that accommodates changed addresses and USPS mail-forwarding requests. In addition, Class Counsel will create a settlement website, a 1-800 number, and a dedicated e-mail address for Class Member inquiries so that Class Members can receive further information, if desired. These proposed methods are, under the circumstances, reasonably calculated to apprise all Class members of the details of the settlement.

The proposed Notice to which the Settling Parties have agreed, attached as Exhibit B to the Settlement Agreement, informs each eligible Class Member of the general provisions of the Settlement and their right to object or appear at the fairness hearing, and the applicable deadlines. The Notice also defines the claims that are released as part of the Settlement, the amount of recovery, anticipated requests for attorneys' fees and costs as wells as Service Fees for the Class Representatives, and it informs Class Members

where to go for further information. The simple, easy-to-read Notice more than satisfies the reasonableness standard of Fed. R. Civ. P. 23(e)(1).

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule, with dates to be calculated in accordance with the Settlement Agreement:

| Dissemination of Notice | 7 days after entry of Preliminary Approval Order |
| Deadline for filing papers in support of Final Approval and Motion for Attorneys' Fees, Expenses, and Service Awards | 35 days prior to Final Approval Hearing |
| Deadline for Class Members to file Objections | 21 days prior to Final Approval Hearing |
| Deadline for filing any papers in further support of Final Approval, including replying to any Objections | 7 days prior to Final Approval Hearing |
| Final Approval Hearing | 75 days after Preliminary Approval (set at Court's convenience) |
| Deadline to move for a Class Distribution Order | 105 days after entry of Final Approval Order |

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Preliminary Approval and enter an Order substantially in the form of Exhibit A attached to the Settlement Agreement.

Dated:  May 28, 2014                    Respectfully submitted,

**GLANCY BINKOW & GOLDBERG, LLP**

By:  s/ *Peter A. Binkow*
Peter A. Binkow (*pro hac vice*)
Kevin F. Ruf (*pro hac vice*)
Kara M. Wolke (*pro hac vice*)
Casey E. Sadler (*pro hac vice*)
Leanne E. Heine (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:    (310) 201-9150
Facsimile:    (310) 201-9160
pbinkow@glancylaw.com
kevinruf@gmail.com
kwolke@glancylaw.com
csadler@glancylaw.com
lheine@glancylaw.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (*pro hac vice*)
Sharon S. Almonrode (*pro hac vice*)
Jayson E. Blake (*pro hac vice*)
Christopher D. Kaye (*pro hac vice*)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone:    (248) 841-2200
Facsimile:    (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
jeb@millerlawpc.com
cdk@millerlawpc.com

**ZIMMERMAN REED, P.L.L.P**
Carolyn G. Anderson (State Bar No. 275712)
David Cialkowski (State Bar No. 306526)
Brian C. Gudmundson (State Bar No. 336695)
June P. Hoidal (State Bar No. 033330X)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone:    (612) 341-0400
Facsimile:     (612) 341-0844
Carolyn.Anderson@zimmreed.com
David.Cialkowski@zimmreed.com
Brian.Gudmundson@zimmreed.com
June.Hoidal@zimmreed.com

**VANOVERBEKE, MICHAUD &
TIMMONY, P.C.**
Thomas C. Michaud (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone:    (313) 578-1200
Facsimile:     (313) 578-1201
tmichaud@vmtlaw.com

**THE WAGNER LAW FIRM**
Avraham Noam Wagner (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:    (310) 491-7949
Facsimile:     (310) 694-3967
avi@thewagnerfirm.com

*Attorneys for Plaintiffs and the Class*